# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

WASEEM DAKER,    )
           )
    Petitioner,  )
           )
v.          )    CV620-115
           )
           )
BRIAN ADAMS,    )
           )
    Respondent. )

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Waseem Daker ("Daker") filed a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus on November 30, 2020, challenging his placement on solitary and segregated confinement.[1]  Respondent has filed a Motion to Dismiss, doc. 17, to which Daker has responded, doc. 22. Daker also filed a "First Amended Petition as a Matter of Course," doc. 35, which respondent seeks to strike, doc. 49.  Also ripe for review are the following Daker motions: Motion to Expand Record, doc. 24; Motion for Discovery, doc. 25; Motion to Consolidate this Case into CV622-37, doc.

---

[1] *Daker v. Warden*, 805 F. App'x 648, 650 (11th Cir. 2020) ("[W]e have specifically held that such claims may proceed in a habeas petition, concluding that 'release from administrative segregation . . . falls into the category of fact or duration of . . . physical imprisonment.'" (citation omitted)).

26; Motion for Sanctions, doc. 27; Motion for Subpoena (GDC), doc 28; Motion for Default Judgment, Alternatively for Contempt, doc. 29; Motion for Summary Judgment, doc. 31; Amended Motion for Sanctions, doc. 33; Amended Motion for Default Judgment, Alternatively, for Contempt, doc. 34; Motion to Expedite Proceedings, doc 38; and finally, another Motion to Consolidate Cases, doc. 50.

## BACKGROUND

Daker is an inmate incarcerated with the Georgia Department of Corrections.  He is currently serving a life sentence, plus 47.5 years, in prison.  Doc. 1 at 1.  During the course of his incarceration, Daker has been housed at various Georgia Department of Corrections' facilities around the State. *Id.* at 51-57.  Daker's first-filed Petition concerns his placement in the Department of Corrections' more-restrictive Tier II segregation in December 2018 while he was housed at Valdosta State Prison (VSP), his October 15, 2020 confinement in Tier II after his transfer to Smith State Prison (SSP), the due process afforded him during the 90-day reviews in between those dates, and the resultant continued segregation in-between those unsuccessful reviews.  *Id.*; *see also id.* at 61-63.

Initially, Daker's Petition sought release from his October 2020 SSP Tier II confinement. Doc. 1 at 63. Daker contended that placement on Tier II violated his right to procedural due process, among other claims. *Id.* However, Daker was released from Tier II in January of 2021. Doc. 17-1 at 1. On December 16, 2021, Daker filed a supplement to his Petition in this action. Doc. 4. In that supplement, Daker claimed that he was recently placed in "segregation/solitary confinement." *Id.* Importantly, Daker did not allege he was assigned to Tier II at that time but contended Respondent placed him in solitary confinement in retaliation for a motion filed in another pending case and without due process. *Id.* at 2. The Court thereafter conducted its Rule 4 review of Daker's case, and it was served upon the respondent. *See* doc. 12. The Order required Respondent to file a response and "show cause why the relief sought should not be granted." *Id.* at 2.

In the Motion to Dismiss filed in response to that Order on September 6, 2022, Respondent argued Daker's claim is moot because he was released from Tier II in January of 2021. Doc. 17. Mootness was the only ground for dismissal Respondent raised at that time. *Id.* Daker responded with multiple arguments against the Motion to Dismiss. *See*

*generally* doc. 22.  First, he argued that his Petition is not moot because "he was forced to sacrifice a federal right in order to be released from segregation." *Id.* at 4.  Specifically, Daker alleged he is repeatedly and unlawfully placed in Tier II because he refuses to comply with the Georgia Department of Corrections grooming policy, which prohibits inmates from growing beards in excess of one-half inch in length, even for religious reasons. *Id.* at 5.  He contends that if he exercises his First Amendment rights by refusing to shave his beard he will return to Tier II segregation, so his temporary release from segregation does not render his petition moot. *Id.*  Next, Daker argued Respondent has not voluntarily ceased the allegedly unlawful conduct. *See id.* at 13.  Finally, Daker informed the Court that he was again placed in Tier II on August 23, 2022, *id.* at 11, and, given this placement, Daker argues that his claims are not moot, and further, the "capable of repetition, yet evading review" exception applies. *Id.* at 15.

On October 17, 2022, Daker filed an "Amended Petition as a Matter of Course," doc. 35, which realleged claims related to his prior segregations and sought to add claims that he was placed in Tier II on February 16, 2022 and August 23, 2022, *id.* at 27-30, a period of

segregation mentioned by Daker previously, but not included in his pleadings as a claim for relief until the Amended Petition was filed. *See generally* doc. 1. In his Amended Petition, he claimed that he remains there "through present-day," clearly in an effort to dispel Respondent's arguments regarding mootness. Doc. 35 at 3. Respondent filed a Motion to Strike Daker's Amended Petition, doc. 49, arguing that Daker impermissibly added claims for relief relating to additional placements in administrative segregation in violation of procedural rules, *see* doc. 49-1. Respondent argues that doing so is the "functional equivalent of amending a petition to add challenges to a second state court judgment, and thus runs afoul of Rule 2" of the Rules Governing § 2254 cases. Doc. 49-1 at 3.

## DISCUSSION

State prisoners have two main avenues of relief for complaints related to their imprisonment under federal law: habeas corpus petitions, generally under 28 U.S.C. § 2254, and complaints under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "These avenues are mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action."

*Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006).    This case is unusual given the Eleventh Circuit's holding that a procedural-due-process claim regarding classification in administrative segregation is cognizable under § 2254, *see Daker v. Warden*, 805 F. App'x at 650, *cert. denied sub nom. Daker v. Perry*, 141 S. Ct. 816, 2020 WL 6551785 (Nov. 9, 2020), even when success on that claim will not affect the length of a prisoner's incarceration, and even though the path to the relief sought is fraught with procedural hurdles for which application in this context is unclear.  *Cf. Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011) (if a claim "would not necessarily spell speedier release, that claim does not lie at the core of habeas corpus, and may be brought, if at all, under § 1983." (internal cites and quotes omitted)); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (claims challenging the fact or duration of a sentence fall within the "core" of habeas corpus, while claims challenging the conditions of confinement "fall outside of that core and may be brought pursuant to § 1983 in the first instance."); *Daker v. Adams*, 2021 WL 966879, at *1 (M.D. Ga. Mar. 15, 2021) (noting the "unusual procedural posture" of the procedural-due-process claim pursuant to § 2254.).

Although the Eleventh Circuit permits a habeas proceeding in this context, the Petitioner here grapples with the tension between the exclusivity of relief allowed in a habeas suit—which allows only release from confinement—and, given the often-short duration of Tier II placements and the procedural requirements in habeas litigation, the resulting circumstances of the claim being moot by the time the Court can grant that relief.   Moreover, it is unclear how the procedural requirements of § 2254 may be mechanically satisfied at all in this context.  Thus, even though these claims may be cognizable under § 2254, as Daker argues, the practical possibility of relief is unclear, and may be extremely limited.  In any event, the Court must turn to Daker's various attempts to obtain habeas relief in this context, as mandated under *Krist v. Ricketts*, 504 F.2d 887, 888 (5th Cir. 1974), and its progeny.[2]

## I.   *Motions for Default and Sanctions*

The Court first addresses Daker's original and amended Motion for Default Judgment, Alternatively for Contempt, docs 29, 34, and his two Motions for Sanctions, docs. 27, 33, which essentially mirror his

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Pricard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

argument in his Motions for Default Judgment.  In all of these motions, Daker argues that Respondent "failed to address the allegations of the Petition but are intentionally delaying doing so."  *See, e.g.*, doc. 27 at 2. Thus, in Daker's opinion, Respondent has somehow automatically defaulted on its defense and therefore Daker should prevail and Respondent and his counsel should be "sanctioned."  *Id.* at 4; *see also* doc. 34 at 5.  However, under Federal Rule of Civil Procedure 12,[3] a party may seek dismissal of a pleading in lieu of filing an Answer.  Fed. R. Civ. P. 12(h)(1).  Respondent's arguments as to whether the allegations are moot are proper because a "moot case is nonjusticiable and Article III courts lack jurisdiction to entertain it."  *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004). Consequently, the Court must first determine that it has jurisdiction before it may reach any of the merits of Daker's allegations, and, therefore, Respondent was under no burden to answer the merits of Daker's allegation prior to that time.  *See, e.g.,* Fed. R. Civ. P. 12(h)(3) (dismissal is mandatory "at any time" the court determines subject

---

[3] Pursuant to Rule 12 of the Rules Governing Section 2254 Proceedings, the Federal Rules of Civil Procedure may apply, to the extent that they are not inconsistent with the Section 2254 Rules.

matter jurisdiction is lacking); *see also* Fed. R. Civ. P. 12(a)(4) (effect of a motion on the time to file a responsive pleading).

In any event, default judgment is not available in a federal habeas proceeding. *See Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) ("[A] default judgment is not contemplated in habeas corpus cases"). Likewise, even though the Court extrapolates that the sanction Daker seeks is release from Tier II, Daker's Motions for Sanctions do not seek any specific or available relief. The Court finds no evidence that Respondent simply seeks "to harass, cause unnecessary delay, or needlessly increase the cost of litigation" warranting sanctions under Rule 11(c), but rather operates appropriately under Rule 12. Accordingly, Daker's Motions for Default, docs. 29 & 34, should be **DENIED**, and his Motions for Sanctions, docs. 27 & 33, are **DENIED**.

## II. *Respondent's Motion to Strike*

Next, the Court must determine which petition is operative in this case, as Daker filed an untimely Petition after Respondent served its response to the original petition. *Compare* doc. 16 (Answer, filed September 6, 2022) *with* doc. 35 (Amended Petition, filed October 17, 2022). Respondent did not object to the Amended Petition, but instead

filed a Motion to Strike it.  Doc. 49.  In this Motion, Respondent argues that Daker's addition of claims for relief relevant to more recent disciplinary proceedings must be filed in separate petitions which correspond to each underlying proceeding.  Doc. 49-1 at 2.  Although styling it a "Motion to Strike," doc. 49 at 1, Respondent does not appear to move under Rule 12(f) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter).  Respondent also does not argue that amendment would be prejudicial.  Rather, Respondent directs the Court to review the order in what he referenced as "Daker I," *Daker v. Adams*, CV621-040, doc. 31 (S.D. Ga. Mar. 10, 2022), where the Court found Daker's similar claims moot.  It appears Respondent seeks to have the entire pleading stricken, asserting that the amended petition is a "thinly disguised attempt to revive a moot petition by challenging a new placement in administrative segregation, which Petitioner has already tried unsuccessfully to do in *Daker* I."  Doc. 49-1 at 3.

In the Order Respondent cites, the Court determined that Daker's "supplemental declaration" was impermissible because the reason Daker

10

was most recently placed in administrative segregation was not the same reason he was previously placed in administrative segregation, and thus the "newly asserted claims [were] not germane to the issues before the Court in the instant case." Doc. 49-1 at 3 (citing CV621-040, doc. 31 at 9-10).   Respondent incorporates that rationale as support for his argument that Daker must file a separate petition here because he seeks relief from separate "judgments."   *See* doc. 49 at 2 (citing Rule 2 of the Rules Governing § 2254 Cases.).   Indeed, Rule 2 mandates that "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court." Rule 2(e), Rules Governing Section 2254 Cases.

Daker responds that because he is not "seeking relief from judgments of more than one state court, or even from one state court," he should not be bound by the rules of habeas proceedings.   Doc. 60 at 2 (alterations omitted).   He claims: "Nothing in Rule 2(e), or in the Eleventh Circuit decisions allowing challenges to placement on segregated confinement suggests that each segregation period is tantamount to a separate 'judgments of [a separate] court.'"   *Id.*   Daker further notes the absurdity of filing separate habeas petitions each time he is placed in

segregation, and the resultant multitude of petitions which might never afford him relief. *Id.* at 3-4.

Daker is not wrong about the "unusual procedural posture" of such claims. *See Daker*, 2021 WL 966879, at *1. The avenue for relief under the recognized theory appears very narrow, and the Court does not doubt Daker is willing to file repetitive claims without regard of the waste of judicial resources he will likely cause. *See* doc. 60 at 4 ("Petitioner states that he is willing to file as many habeas corpus petitions as he has to in order to challenge his placement on segregated confinement . . . ."). Indeed, the circumstances where a petitioner may obtain habeas relief from a segregation assignment appear to be so limited that it may be practically impossible.[4] But the rules are the rules, and he must comply.

However, to apply the habeas rules in this "unusual" context, the Court must venture into uncharted waters. Although Respondent is not incorrect in his description of *Daker I*'s holding, that rationale does not

---

[4] One obvious exception would be where a prisoner is subjected to segregated confinement for extended periods of time. *Cf. Apodaca v. Raemisch*, 139 S. Ct. 5, 10 (2018) (Sotomayor, J. concurring in denial of certiorari) (admonishing "[c]ourts and corrections officials . . . [to] remain alert to the clear constitutional problems raised by keeping prisoners . . . in near total isolation from the living world." (internal quotation marks and citation omitted)). It is simply unclear to what extent an inmate subjected to serial assignments to segregated confinement, based on separate and repeated disciplinary infractions, might practically utilize § 2254 to seek relief.

support a Rule 2-based conclusion here.  Unlike *Daker I*, the Amended

Petition alleges ripe claims—notwithstanding that they may be barred

on other grounds.  Additionally, contrary to Respondent's argument,

under Rule 2, Daker may challenge multiple judgments *from the same*

*court* in a single petition.  *Retic v. United States*, 321 F. App'x 865, 865-

66 (11th Cir. 2009) (affirming the district court's inclusion of challenges

to multiple "judgments" within a single petition on the basis that the

judgments arose from courts within the same circuit);[5] *see also In re*

*Caldwell*, 917 F.3d 891, 893 (6th Cir. 2019) (citing *Hardemon v.*

*Quarterman*, 516 F.3d 272, 275-76 (5th Cir. 2008)) ("An inmate thus may

challenge multiple judgments from the same court in a single petition . .

. ."); *Wilson v. Thomas*, 2017 WL 7725241, at *1 n. 1 (M.D. Ala. May 1,

2017) ("This court understands Rule 2(e) of the Rules Governing Section

2254 cases to allow [petitioner] to attack the separate 2003 and 2001

judgments in a single habeas application, because the separate

judgments were entered by the same state court . . . .").  Thus, it is

---

[5] The lower court described Rule 2(e) as being previously denominated Rule 2(d), the committee comment for which stated, "Subdivision (d) provides that a single petition may assert a claim only against the judgment or *judgments* of a single state court (i.e., a court of the same county or judicial district or circuit.) . . . ." *Retic v. United States*, 2008 WL 11425388, at *4 n. 4 (N.D. Ala. Mar. 31, 2008).

possible that Daker *might* amend his petition to challenge multiple "convictions," (in this case disciplinary proceedings) as long as they were all adjudicated by SSP officials, *i.e.*, the same "court," without violating Rule 2.  Respondent's briefing does not acknowledge this issue or direct the Court to any specific claim which should have been filed separately from the current one on the grounds of it being decided by a different "court," or in this scenario, a different prison's disciplinary review board. *See generally*, doc. 17 at 49.  Despite this, the proceedings at VSP plausibly constitute a separate "court," requiring a separate petition for review in this overwrought analogy.  Given the plain language of Rule 2, that "[a] petitioner who seeks relief from judgments of *more than one state court* must file a separate petition covering the judgment or judgments *of each court*," which, on its face requires separate petitions if the petition seeks relief from judgments from different courts, Daker's VSP claims are barred.  However, filing multiple SSP claims in a single petition does not alone appear to violate Rule 2.  Because Respondent's arguments supporting the Motion to Strike fail, the Motion is **DENIED.**  Doc. 49.

### III.   *Amended Petition*

Whether Daker's Amended Petition is permissible remains at issue, although for reasons separate than those raised by Respondent.  At the time Daker filed his Amended Petition, Respondent had already served its response to the original petition.  *Compare* doc. 16 (Answer-Response, filed September 6, 2022) *with* doc. 35 (Amended Petition, filed October 17, 2022).  Rule 15(a) arms district courts with "ample power" to deny leave to amend when justice so requires.  *See Ellzey v. United States*, 324 F.3d 521, 526 (7th Cir. 2003) *abrogated on other grounds by Mayle v. Felix*, 545 U.S. 644 (2005) (AEDPA's aim to "expedite resolution of collateral attacks . . . should influence the exercise of discretion under Rule 15(a)—which gives the district judge the right to disapprove proposed amendments that would unduly prolong or complicate the case . . . .").  Under that Rule, once a responsive pleading has been filed, a prisoner may amend the petition "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. Rule 15(a)(2).  Therefore, Petitioner may not amend his petition as a "matter of course"; rather, without written consent, he must obtain leave of court to do so.  *See* Fed. R. Civ. P. 15(a)(1), (2).  Although leave to amend is generally freely given,

15

*Foman v. Davis,* 371 U.S. 178, 182 (1962), it is by no means guaranteed, *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981).[6]  Instead, "an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change." *Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) (internal citation, quotations, and alterations omitted). Respondent has not argued it would be prejudiced by amendment, but the Court should construe the Amended Petition as a Motion to Amend and decline to allow amendment for the reasons discussed below.

Notwithstanding the likely timeliness and "relation back" issues which might implicate Rule 15(c) and the relevant statute of limitations, thereby precluding success on the underlying claims,[7] the proposed

---

[6]  Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7]  "[A]n amended claim relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading." *Bradley v. Sec'y, Fla. Dept. of Corrs.*, 2018 WL 3238836, at *18 (11th Cir. Apr. 2, 2018) (citing Fed. R. Civ. P. 15(c)(1)(B)); *see also* 28 U.S.C. § 2242 (making Rule 15 expressly applicable to habeas-corpus petitions)

amendment submitted by Daker is futile.  Specifically, Daker filed the
Amended Petition continuing to complain of segregated confinement
from which he was released before he filed the Amended Petition.  *See*
doc. 35 at 99-101.  Eleventh Circuit holdings prevent a moot petition from
being "revived by 'collateral consequences'" when the petition was filed
after release from segregation.  *Medberry v. Crosby*, 351 F.3d 1049, 1053-
54 (11th Cir. 2003).  Thus, Daker's claims as to any unlawful assignment
in Tier II filed after his release are moot and cannot be revived.  *See, e.g.,*
*id.* at 1053–54 (finding where petitioner already completed his
disciplinary term and had been released from disciplinary confinement
at the time he filed his § 2254 petition, his petition was moot when filed
and could not "be revived by collateral consequences[ ]") (citation
omitted).

Alternatively, a petitioner who files a petition prior to release, but
is released prior to adjudication, would ordinarily have the burden of
showing that he continues to suffer some "collateral consequences" which
were a result of the already-served disciplinary sanction sufficient to
prevent a finding of mootness.  *Spencer v. Kemna*, 523 U.S. 1, 14-18
(1998) (the expiration of Spencer's parole-revocation sentence caused his

habeas petition to become moot, as his failure to show any continuing "collateral consequences" of the revocation order meant that the court was no longer presented with an Article III "case or controversy"); *see also McCollum v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982) ("If [petitioners] filed their habeas corpus petitions while they were in disciplinary confinement, a collateral consequence—even something so hypothetical and remote as the possibility that the record of that confinement might result in a stiffer sentence if the petitioners were later convicted of an unrelated offense—would be enough to prevent their release from mooting the petitions."). Consequently, in this case, because Daker filed his Amended Petition while he was still confined in Tier II, a question remains whether his prior claims may be justiciable because of any collateral consequences—a posture different from *Daker I*. Accordingly, many of the arguments asserted in the Respondent's Motion to Strike which urge the Court to examine the holding in Daker I, are off base.

Daker's Response to the Motion to Strike deserves further review in determining whether his present claims may revive his prior claims and therefore whether amendment should be allowed. Daker defends the legitimacy of his claims by submitting excerpts of discipline reports

("DRs") justifying his confinement in Tier II.  Doc. 60 at 7.  There, Daker argues that his placements in Tier II in both February 2022 and August 2022 were "for the same reasons," and thus this case is distinguishable from other cases where mootness was found.  *Id.* at 6-8.  The DR indeed indicates he received infractions on both July 29, 2022, and February 16, 2022.  *Id.*  However, the quoted DR also reveals that on July 29, 2022, a search of Daker's cell resulted in a discovery of contraband which was presumptively not discovered in the prior search in February 2022.[8]  *Id.* at 7 (DR indicating that July 29 search revealed a smart phone and four weapons, and that February 16 search revealed multiple weapons, altered tablets, and other contraband).  Thus, Daker's most recent confinement does not appear to be a "collateral consequence" of his prior confinement but rather the result of an entirely new "conviction," based on a search occurring on an entirely different day — even though both instances are noted in the same report.

---

[8] The inclusion of multiple instances of illegal activity within one DR does not automatically lead the Court to the conclusion that Daker's August 2022 placement was for the same reasons as his February placement, as he suggests, but rather that they are simply both listed on the same DR form.  The Court infers that guards did not leave weapons in Daker's cell which were again found at a later date, and consequently he was obviously reprimanded for separate instances of violative behavior.

19

In other words, Daker does not allege that his current disciplinary confinements have been enhanced or exacerbated by the fact that his past ones exist, and he has not convinced the Court that the prior infraction impacted the subsequent confinement at all. *See, e.g., Spencer*, 523 U.S. at 13 (Considering a challenge to revocation of parole and addressing what constitutes a collateral consequence sufficient to keep the controversy alive for standing purposes, excluding the potential detrimental effect of a revocation of parole in future parole proceedings.); *cf., Mattern v. Sec'y for Dep't of Corr.*, 494 F.3d 1282, 1285 (11th Cir. 2007) (holding that the fact that habeas petitioner had been released from imprisonment subsequent to his filing of petition did not render his petition moot because he faced further collateral consequences after having been arrested again due to prior issues: initial sentencing court based sentence on a sentencing score sheet that incorrectly listed his prior conviction, and that misstatement resulted in an enhanced sentence on probation revocation at issue.).

Rather, Daker alleges, as he has many times before, that he repeatedly refuses to conform with allegedly unconstitutional policies,[9]

---

[9] Daker's own briefing indicates that he was placed in Tier II for possession of

and that he is confined in segregation as punishment each time he refuses. His disciplinary report reflects *separate* policy violations, although they are based on Daker's own repeated conduct. In fact, Daker's own briefing argues that each time he is placed in Tier II constitutes a separate constitutional violation. Accordingly, his current confinement, which was clearly the result of a separate instance of policy violation, is not a collateral consequence of his prior confinements, and thus, even though he is again confined, his claims of prior segregation (and of potential future segregation) are moot and cannot be revived. Accordingly, his amendment is futile. *See, e.g., Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (amendment is futile if the amended pleading would still be subject to dismissal).

Likely to avoid such a determination, Daker filed two Motions to Consolidate this case into *Daker v. Adams*, CV622-037 (S.D. Ga. May 24, 2022). Docs. 26 & 50.[10] Respondent opposed consolidation, reiterating

---

contraband. Doc. 60 at 7.

[10] Daker's first Motion to Consolidate appeared to only seek consolidation of the present case with *Daker v. Adams*, CV622-037 (S.D. Ga. May 24, 2022), *see* doc. 26 at 1, but his later Motion appears to seek consolidation of three cases: the present case, *Daker v. Adams*, CV622-037, and *Daker v. Adams*, CV622-071. *See* doc. 50 at 3 (After describing each of three cases, claiming that "Daker has moved to consolidate these cases," but entitling the motion as "Motion to Expedite.").

the Rule 2 argument, and again urging the Court to review its findings

in "*Daker I.*"  Doc. 52 at 2-3.  In his Motions, Daker alleges that he

challenged his July 29, 2022 - present day placement on Tier I and Tier

II segregation at SSP in case number CV622-071 (S.D. Ga. Sept. 20,

2022).  That case was filed prior to his attempt to amend his petition in

the case at bar.  *See* doc. 35 (signed Aug. 22, 2022).  Daker also states

that *Daker v. Adams*, CV622-037 makes allegations regarding

confinement occurring in February 2022, but a review of the docket

reflects that he seeks to amend his petition in that case, as he has here,

to include allegations regarding the August 2022 confinement.  *See Daker*

*v. Adams*, CV622-037, doc. 14 (S.D. Ga. Sept. 20, 2022).

Ultimately, Daker's Amended Petition, doc. 35, concerns claims

that would be subject to dismissal as  moot, *i.e.*, they concern segregation

from which Daker has already been released, or they otherwise concern

those confinements occurring on the same date as ones alleged in his

original petition in CV622-071 (S.D. Ga. Sept. 20, 2022), but that he also

seeks to add to his petition in *Daker v. Adams*, CV622-037, doc. 14 (S.D.

Ga. Sept. 20, 2022).  Accordingly, the only ripe and, therefore, potentially

viable claims in the Amended Petition are duplicative of those alleged in

CV622-071. Therefore, rather than grant Daker's Motions to Consolidate the remaining August 2022 claim into Daker's other pending cases, the Court finds it more efficient to dismiss this case in favor of the ripe case, given that the bulk of his Amended Petition here concerns his unviable allegations arising prior to August 2022. *See* Doc. 35 at 1-101. In sum, Daker's Motions to Consolidate are **DENIED**, docs. 26 & 50, and although the Motion to Strike is likewise denied, *supra*, Daker's Amended Petition should not be considered because leave to amend would not have been granted had it been sought. *See, e.g., Trotter v. Shull*, 720 F. App'x 542, 545 (11th Cir. 2017).

IV.    *Motion to Dismiss*

The operative petition in this case is, therefore, Daker's originally filed petition, doc. 1. Respondent's Motion to Dismiss, doc. 17, remains pending as to that petition. The Court has already discussed the reasons why Daker's pre-August 2022 claims are moot, but Daker asserts that exceptions should be made. *See generally* doc. 22. Daker's arguments regarding the exceptions to the mootness doctrine are invalid for the same reasons that they were in CV621-040: (1) Daker's "conditional release" argument is not a delineated exception to the mootness doctrine;

(2) Daker has not persuaded the court that there is a reasonable expectation he will be held in Tier II without procedural safeguards in the future; and (3) any possible future repetition is not incapable of review. *See Daker v. Adams*, CV621-040, doc. 32 at 7-15 (S.D. Ga Jan. 12, 2022) *adopted* doc. 38 (S.D. Ga. Mar. 10, 2022).

Daker's response to the Motion to Dismiss relies in part on *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021), and *abrogated by Sossamon v. Texas*, 563 U.S. 277 (2011). *See* doc. 22 at 11. *Smith* was a Religious Land Use and Institutionalized Person Act (RLUIPA) case based on prison officials' denial of requests for religious accommodation. The plaintiff, Smith, was released prior to adjudication of this RLUIPA claim, and the District Court found that his request for injunctive relief — Smith sought permission to obtain religious paraphernalia for use in worship — was rendered moot given his release from prison. 502 F.3d at 1262-63. Smith appealed, and during the pendency of the appeal he was reincarcerated. *Id.* at 1267. Smith asserted that because he was reincarcerated after the district court entered its summary judgment order, and because he was still subject to the allegedly unlawful policy,

his claim for injunctive relief should be considered.  The Eleventh Circuit agreed, determining that Smith's claim for injunctive relief was not moot because the fundamental question with respect to mootness is whether events have occurred subsequent to the filing of an appeal that "deprive the court of the ability to give the appellant meaningful review."  *Id.* at 1267 (citing *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)).

This case is clearly distinguishable from *Smith*.  First, *Smith* is not a habeas case, and the injunctive relief sought there was not a release from confinement—the only avenue available in a habeas case.  The relief sought there was to obtain certain items, relief that was still possible in that case at the time of his reincarceration.  Here, Daker may not be awarded release from a confinement from which he was already released and thus the Court has no ability to give him meaningful review on those claims.  *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1190 (11th Cir. 2011) ("[T]he Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, (1975)).  Therefore, Daker's argument fails, and as the Court has found

no reason to except Daker's claims from the mootness rules, the Motion to Dismiss should be **GRANTED**.  Doc. 17.

Finally, the Recommendation on the Motion to Dismiss will render the rest of Daker's motions obsolete.  For example, Daker's Motions to expand Record, doc. 24, for Discovery, doc. 25, and for Subpoena, doc. 28, seek movement history and records from the prison regarding his confinement between October 2020 through his post-August 2022 confinement in Tier II.  *See* doc. 24 at 3; doc. 25 at 3; doc. 28 at 3.  These motions were filed prematurely.  Because he is entitled to no retrospective relief regarding his pre-August 2022 allegations in a habeas petition, the discovery he seeks related to those events is irrelevant.  And because the August 2022 claims are duplicative and should be dismissed, the Court finds no current case or controversy warranting the discovery-based relief Daker seeks in these motions.  *Strickland v. Alexander*, 772 F.3d 876, 882 (11th Cir. 2014) ("Article III of the Constitution extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'"); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot

affect the matter in issue in the case before it.'") (internal citation omitted). Thus, they are **DENIED**. Docs. 24, 25 & 28. Likewise, given the present recommendation and disposition, Daker's Motion for Extension of Time to Respond to the Motion to Dismiss and his Motion to Expedite Proceedings are **DENIED** as moot. Docs. 19 & 38.

In summary, Daker's Motions for Default should be **DENIED**. Docs. 29 & 34. His Motions for Sanctions, seeking default, are **DENIED**. Docs. 27 & 33. Respondent's Motion to Strike is **DENIED**. Doc. 49. Daker's Amended Petition should be construed as a Motion to Amend and should be **DENIED**. Doc. 35. Respondent's Motion to Dismiss should be **GRANTED**. Doc. 17. If the District Judge adopts the recommendation on the Motion to Dismiss, Daker's Motion for Summary Judgment should be **DENIED** as moot. Doc. 31. All other Motions filed by Daker are **DENIED** for the reasons addressed herein. Docs. 19, 24, 25, 26, 28, 38 & 50.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and

serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Applying the Certificate of Appealability (COA) standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); see *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not

be taken in good faith.  Thus, in forma pauperis status on appeal should

likewise be **DENIED**.  28 U.S.C. § 1915(a)(3).

  **SO ORDERED, REPORTED, and RECOMMENDED,** this 24th

day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA